IDA M. TOOLEY, as Administratrix, etc., of ARTHUR A. TOOLEY, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 21709.)

Court of Claims, July 29, 1931.

*Stedman & Waterman,* for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Deputy Assistant Attorney-General,* of counsel], for the defendant.

BARRETT, P. J. The accident from which occurred the injuries to claimant's intestate from which he died, I am satisfied, was caused by the negligence of the State's employee. The standing vehicles from between which claimant's intestate was withdrawing the chain were on the extreme north or right side of the highway and in plain view of Baker, the State's employee, as he drove his truck down the hill and toward the place where the accident happened. These vehicles so standing constituted a situation compelling claimant to use somewhat more than ordinary care. (*Tooker* v. *Fowler, etc.,* 147 App. Div. 164; Vehicle & Traffic Law, § 81, subd. 5, as amd. by Laws of 1930, chap. 756.)

The evidence leads to the conclusions that claimant's intestate was struck by the State's truck on the north or right side of the road; that no signal was given of the approach of the truck and that it traveled at a speed of from twenty to twenty-five miles an hour without changing its speed or its course until it came within three feet of claimant's intestate and that it was then too late to avoid the accident. Claimant's intestate at the time when he was struck, being on the north side or his own side of the road, had no reason to assume that the truck with one-half of the highway clear would hit him, and under the circumstances there is no sufficient proof on the part of the State to justify a finding that he was negligent. If the driver of the truck approaching this known place of possible danger had drawn to the left, as I think it was his duty to do, there would have been no accident.

Even if Distler, who was in charge of the threshing outfit, said it was not Baker's fault or that Baker was going slow, such statements would not change the result as they are only the expressions of the witness' opinions. Neither would it have affected the conclusion that I have reached if Distler did, as alleged, motion Baker to proceed down the hill, because it was the obvious duty of Baker to proceed with far more caution than he used.

It follows that claimant is entitled to an award.

Parsons, J., concurs.

Potter, J. (dissenting). I respectfully dissent from the award made by my brother judges in this claim on the simple ground that under the facts established by the evidence on the trial the amount of the award, $16,000, is palpably inadequate.

The claimant's husband at the time of his death was thirty-three years of age. He left surviving him a wife and eight children, now nine, one being born in May of this year, and claimant's husband was killed in November, 1930. The youngest child is an infant less than four months old at the present time.

The court has found that the yearly earning capacity of claimant's husband was $1,200. (See court's finding No. 11.) They have also found that his death was caused by the negligence of a State employee and the findings on that subject are as follows:

" 27. That the New York State truck that struck Arthur A. Tooley was a large five ton Mack truck owned by the State of New York and having commercial license number C-103-249 and being driven by Ray Baker of Warsaw, New York, an employee of the State of New York.

" 28. That said five ton Mack truck at the time of the accident was loaded with three tons of gravel that was being drawn by the

State employee, Ray Baker, for the purpose of repairing and improving the shoulders on State Highway number 9042, Route 239, about a mile west of the scene of the accident.

"29. That the State truck passed within two feet of the rear tractor and then turned sharply to the south side of the road where it tipped over.

"30. That the truck was driven down said hill in high gear.

"31. That at the time and place of the accident the truck was being driven at a speed from twenty to twenty-five miles an hour.

"32. That as the truck passed the front tractor it was going between twenty and twenty-five miles an hour.

"33. That the truck went about eighty feet from the front tractor before it tipped over on the south side of the road.

"34. That the State employee, Baker, the driver of the truck, was negligent in driving the State truck down the steep hill in high gear.

"35. That the State employee, Baker, was negligent in driving the State truck at the rate of speed that he did at the time of the accident.

"36. That the State employee, Baker, the driver of the truck, gave no signal by horn, voice or other signalling device as he drove the truck down the hill.

"37. That the State employee, Baker, gave no signal by horn, voice or other signalling device as he attempted to pass the bean separator or the two tractors.

"38. That the State employee, Baker, was negligent in attempting to pass the said bean separator and tractors without giving them timely and proper warning by his horn, voice or other signalling device.

"39. That the State employee, Baker, was negligent in driving his truck north of the center of the road when passing the said bean separator and tractors.

"40. That the State employee, Baker, was negligent in driving his truck on the north side of the road as he attempted to pass the threshing outfit when there were no other cars approaching and traveling in an opposite or easterly direction.

"41. That the State employee, Baker, did not have his truck under control as he proceeded to pass the said threshing outfit.

"42. That the State employee, Baker, knew or should have known that the claimant's intestate and others were on the State highway and about the threshing outfit.

"43. That the State employee, Baker, was negligent in attempting to drive his truck past the threshing outfit when the same was out of control, when he knew or should have known that the claimant's intestate and others were about the said threshing outfit on said highway."

The expectancy of life of claimant's husband at the time of his death was 33.21 years. Measuring this by his earning capacity would mean an award of $39,842. This would be too large an award, but let us take an earning capacity of $800 a year, which would be two-thirds of $1,200, and that would be $26,588. Can any one say that this is too large for the claimant and her nine infant children who have been deprived of a husband and father? I think not. It seems to me that an award should be made in this case of at least $25,000.

Let us assume that the claimant receives the whole amount of $16,000, which she will not, and is able to invest it at five per cent. That would make a yearly return of $800. Can it be possible for her to properly care for herself and nine children on that sum? I think not. I am of the opinion that in a case of this kind the damages suffered by this claimant and her infant children by reason of the negligent killing by a State employee of her husband should at least be large enough in a reasonable measure to take care of herself and her family comfortably for some time to come.

In my judgment under the facts established on the trial of this claim, the claimant should have an award of at least $25,000.